**Martin E. Hansen, OSB # 80052**
meh@francishansen.com
FRANCIS HANSEN & MARTIN LLP
1148 NW Hill Street
Bend, OR 97701
(541) 389-5010
(541) 382-7068 (fax)
Attorneys for Plaintiff Ruff Wear, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RUFF WEAR, INC., an Oregon corporation, | Case No.  6:14-cv-00376-MC |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO MOTION TO QUASH SERVICE OF PROCESS AND DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |
| ORIGINAL DOG GEAR APS, | |
| Defendant. | |

I.    <u>INTRODUCTION</u>

Defendant has moved to dismiss Plaintiff's complaint for lack of personal

jurisdiction and for improper service of process (the "Motion").  Defendant's Motion

should be denied because the Court has personal jurisdiction over Defendant and any

purported deficiencies with service of process are being remedied shortly.

Defendant's motion to dismiss for lack of personal jurisdiction ignores the

dispositive facts which clearly demonstrate that Oregon has personal jurisdiction over

Defendant in connection with Plaintiff's breach of contract claim.  Specifically,

Defendant's Motion ignores that Defendant reached into Oregon and initiated what

became a 10-year business and contractual relationship with Plaintiff, an Oregon

corporation headquartered in Bend, Oregon.  Defendant became a retailer and then

distributor of Plaintiff's products, and used Plaintiff's intellectual property to sell and distribute Plaintiff's products abroad.

During the course of the parties' business/contractual relationship, including the Ruff Wear Distribution Agreement (the "Agreement") at issue in this case, Defendant:

    (1)    placed orders for Plaintiff's products in Bend, Oregon;

    (2)    wired millions of dollars for Plaintiff's products into Plaintiff's Bend, Oregon bank account;

    (3)    sent regular sales, inventory and other reports to Plaintiff in Bend, Oregon; and

    (4)    accepted shipments of Plaintiff's products from Bend Oregon.

Defendant visited Plaintiff's facilities in Oregon in furtherance of the parties' business and contractual relationship (Plaintiff, on the other hand, has never visited Defendant's facilities in Denmark), and expressly agreed that Oregon law governed their relationship.  Defendant still owes Plaintiff nearly $170,000 under the Agreement, and improperly continued to use Plaintiff's intellectual property for Defendant's benefit after termination of the Agreement.  As set forth in more detail below, Defendant's claim that Oregon lacks personal jurisdiction over Defendant is baseless for this reason.

Defendant has also moved to quash service.  Plaintiff is in the process of re-serving Defendant in an expedited manner to remedy any claimed deficiencies.  Thus, by the time there are any further proceedings in this case, Defendant's claim of improper service of process will be moot.  For this reason, Defendant's motion to quash service should also be denied.

## II.   <u>STATEMENT OF FACTS</u>

Plaintiff is a manufacturer of canine outdoor gear.  (Declaration of Will Blount ("Blount Decl."), ¶ 2.)  Plaintiff has been headquartered in Bend, Oregon since June 1998.  (*Id.*)

In March 2003, defendant, Original Dog Gear APS ("Defendant"), approached Plaintiff and asked to become a retailer of Plaintiff's product line.  (Blount Decl., ¶ 3.)  Plaintiff originally granted Defendant the right to serve as a retailer of Plaintiff products.  (*Id.*)

After serving as a retailer for a number of years, Plaintiff and Defendant entered into a Ruff Wear Distribution Agreement, whereby Defendant would serve as a distributor for the promotion and sale of Plaintiff's products in Europe.  (Blount Decl., ¶ 4.)  Plaintiff and Defendant have renewed the Ruff Wear Distribution Agreement multiple times.  (*Id.*)

.   The latest renewal of Plaintiff's and Defendant's Ruff Wear Distribution Agreement occurred in December 2010 (the "Agreement").  (Blount Decl., ¶ 5; Exh. 1.)  Plaintiff's President, Will Blount, met with representatives of ODG and discussed the Agreement in Thailand, but the terms of the Agreement were finalized through email communications and telephone calls with Defendant after Mr. Blount returned to Bend, Oregon.  (*Id.*)  Mr. Blount also signed the Agreement in Bend, Oregon.  (*Id.*)  This lawsuit arises out of Defendant's breach of the Agreement.  (*Id.*)

The Agreement required Defendant to submit numerous sales, inventory and other reports to Plaintiff.  (Blount Decl., ¶ 6; Exh. 1.)  All such reports were sent by Defendant to Plaintiff's Bend, Oregon headquarters.  (Blount Decl., ¶ 6.)  In addition, all

of Defendant's product orders under the Agreement were submitted by Defendant to Plaintiff's Bend, Oregon headquarters.  (*Id.*)

All payments made by Defendant to Plaintiff pursuant to the Agreement were wired to Plaintiff's Bend, Oregon bank account.  (Blount Decl., ¶ 7; Exh. 1.)  To date, those payments are approximately $2,311,339.75.  (Blount Decl., ¶ 7.)  Pursuant to the Agreement, Defendant currently owes Plaintiff approximately $169,570.92 plus interest for inventory that Defendant has not paid for.  (*Id.*)

The Agreement expressly requires that all notices and other communications required or permitted under the Agreement should be addressed to Plaintiff's Bend, Oregon headquarters.  (Blount Decl., ¶ 8; Exh. 1.)  The header on each page of the Agreement contains the address, telephone number, fax number and e-mail address of Plaintiff's Bend, Oregon headquarters.  (*Id.*)  Plaintiff has since moved its headquarters to a different location in Bend, Oregon.  (*Id.*)

In order to ensure that any and all disputes under the Distribution Agreement were resolved in Oregon under Oregon law, the Agreement at contains a "Governing Law and Jurisdiction" provision stating that "[t]he law of the state of Oregon, USA, shall govern this Agreement."  (Blount Decl., ¶ 9; Exh. 1.)

The Agreement was due to expire December 1, 2013.  (Blount Decl., ¶ 10; Exh. 1.)  Plaintiff terminated the Agreement for cause in October 2013 based on Defendant's multiple breaches of the Agreement.  (Blount Decl., ¶ 10.)  Defendant nevertheless improperly continued to use Plaintiff's intellectual property.  (*Id.*)  Specifically, Defendant continued to sell Plaintiff's products and use Plaintiff's logos, trademarks and other branding in the conduct of Defendant's business.  (*Id.*)

During its business relationship with Plaintiff, Defendant's representatives have visited Plaintiff's headquarters in Bend, Oregon on two different occasions. (Blount Decl., ¶ 11.) Both of Defendant's visits to Bend, Oregon were for the purpose of discussing business matters and furthering the companies' ongoing business and contractual relationship. (*Id.*)

Defendant is based on Denmark. (Blount Decl., ¶ 12.) At no time during the business relationship between Plaintiff and Defendant has any agent or representative of Plaintiff visited Defendant in Denmark. (*Id.*)

Plaintiff has never shipped or delivered any of Plaintiff's products that are the subject of the Agreement to Defendant in Denmark. (Blount Decl., ¶ 13.) Instead, at Defendant's request, Plaintiff shipped all Plaintiff products that were subject of the Agreement to a warehouse in Germany. (*Id.*) Ruff Wear shipped some of the products that were the subject of the Agreement from Bend, Oregon, while others were shipped from other locations. (*Id.*) Since the December 1, 2010 effective date of the Agreement, Plaintiff has made 99 shipments of Plaintiff products from Bend, Oregon to Defendant's warehouse in Germany. (*Id.*) The value of those shipments from Bend, Oregon was $1,548,749.86. (*Id.*) The warehouse in Germany was Plaintiff's last contact with the products that were the subject of the Agreement. (*Id.*)

## III.   ARGUMENT

### A.   Standard of Review

Where, as here, a district court acts on a defendant's motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to

dismiss." *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

> "To make that showing, [plaintiffs] need only demonstrate facts that, if true, would support jurisdiction over the Defendants.  Unless directly contravened, [plaintiffs'] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiffs'] favor for the purposes of deciding whether a prima facie case for personal jurisdiction exists.

*Mattel, Inc. v. Geiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (citations omitted).  Thus, Plaintiff need not prove its allegations against Defendant.  Instead, Plaintiff only needs to make out a *prima facie* case of personal jurisdiction over Defendant.  *Raptor Archery, Inc. v. 2XJ Enters.*, 2009 U.S. Dist. LEXIS 79048, *4 (D. Or. 2009)  ("The court need not decide whether plaintiff has proven its contentions, but only whether it has made a prima facie case for personal jurisdiction.") (citing *Mattel, Inc.*, 354 F.3d at 862).  Here, Plaintiff's complaint and the declarations submitted by Plaintiff with this Response clearly establish a *prima facie* case of personal jurisdiction over Defendant.

**B.**  **Defendant's Motion to Dismiss Should Be Denied Because The Court Has Personal Jurisdiction Over Defendant**

**1.**  **Oregon's Long-Arm Statute (ORCP 4) Allows For Personal Jurisdiction To The Outer Limits of Due Process Under The United States Constitution**

Whether the Court has personal jurisdiction over Defendant in this case is governed by Oregon's long arm statute set forth on ORCP 4.  *See* FRCP 4(k)(1)(A) ("Service of a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in

the state where the district court is located….")  Thus, under FRCP 4(k)(1)(A), the Court has jurisdiction over Defendant to the same extent that an Oregon Circuit Court would have jurisdiction over Defendant.

"ORCP 4B through 4K enumerate specific bases for the exercise of personal jurisdiction over out-of-state defendants, while ORCP 4L, the 'catchall provision,' extends personal jurisdiction to the limits of due process under the Fourteenth Amendment to the federal constitution."  *Boehm & Co. v. Environmental Concepts, Inc.*, 125 Or. App. 249, 252 (1993); *see also, State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384, (1982); ORCP 4E(3) (permitting the assertion of personal jurisdiction in any case that "[a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to send from this state goods documents of title, or other things of value …."); ORCP 4L (permitting the assertion of personal jurisdiction "in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.")  Thus, under Oregon law, the question is whether exercising personal jurisdiction over Defendant is consistent with federal principles of due process.

The Court's exercise of personal jurisdiction over a non-resident such as Defendant does not violate due process if Defendant has had sufficient contacts with Oregon so that the exercise of jurisdiction over Defendant is fair.  *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  Here, Plaintiff has made a *prima facie* showing that Defendant has had sufficient minimum contacts with the state of Oregon, and that this Court's exercise of personal jurisdiction over Defendant comports with fair play and

substantial justice.  Therefore, this Court can properly exercise personal jurisdiction over Defendants pursuant to FRCP 4(k)(1)(A), ORCP 4E(3) and/or ORCP 4L.

### 2.    The Court Has Specific Jurisdiction Over Defendant

Plaintiff does not contend that the Court has general personal jurisdiction over Defendant in this case.  The Court does, however, have specific personal jurisdiction over Defendant.  The Court determines whether it has specific personal jurisdiction over Defendant through a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  Where the plaintiff establishes the first two prongs of the test, the burden then shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would be unreasonable.  *Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985); *Schwarzenegger*, 374 F.3d at 802.

### a.    Defendant has purposefully availed itself of the privilege of conducting activities in Oregon

Under the first prong of the three-part specific jurisdiction test, Plaintiff must make a prima facie showing that Defendant has purposefully availed itself of the privilege of conducting activities in Oregon.  *See, e.g., Schwarzenegger*, 374 F.3d at

802 ("A purposeful availment analysis is most often used in suits sounding in contract.");

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("For part one of this three-part test, we have typically analyzed cases that sound primarily in contract--as Boschetto's case does--under a 'purposeful availment' standard."); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ("[I]n contract cases, we typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum….")

"A showing that a defendant purposefully availed itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."  *Schwarzenegger*, 374 F.3d at 802; *see also, Sinatra v. Nat'l Enquirer, Inc., 854* F.2d 1191, 1195 (9th Cir. 1988) ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."); *Exp. Global Metals, Inc. v. Memking Recycling Group, LLC,* 2013 U.S. Dist. LEXIS 154379 at *14 (finding purposeful availment where the out of state defendant solicited and/or engaged in business with an Oregon corporation).  "By taking such actions, the defendant's 'activities are shielded by the benefits and protections of the forum's laws,' and it is therefore 'presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'"  *Original Talk Radio Network, Inc. v. Alioto*, 2013 U.S. Dist. LEXIS 113788, *13 (D. Or. 2013) (quoting *Burger King*, 471 U.S. at 475-76).

Here, Plaintiff has made a *prima facie* showing that Defendant purposefully availed itself of the privilege of conducting activities in Oregon.  Defendant initiated the business relationship with Plaintiff that resulted in the parties transacting business for

over 10 years.  At all times during that relationship, Plaintiff was headquartered in Bend,

Oregon.  Defendant's representatives travelled to Plaintiff's facilities in Bend, Oregon on

two occasions in furtherance of that business relationship.

Moreover, contrary to what Defendant argues in its Motion, the Agreement at

issue required Defendant's performance in Oregon.  Specifically, the Agreement

required Defendant to send regular reports, notices, and communications regarding

Defendant's performance under the Agreement to Plaintiff's Bend, Oregon

headquarters.  All of Defendant's product orders under the Agreement, and the payment

of millions of dollars for those orders, were submitted by Defendant to Plaintiff in Bend,

Oregon.  Defendant also accepted shipments of Plaintiff's products from Bend, Oregon.

Defendant still owes Plaintiff approximately $169,570.92 plus interest for inventory that

Defendant has not paid for.

In addition, the Agreement contains an Oregon choice of law provision.  Thus,

Defendant was on notice that Oregon law would govern any dispute arising out of the

Agreement.  *See, e.g., Exp. Global Metals, Inc.*, 2013 U.S. Dist. LEXIS 154379 at *7 ("A

choice-of-law and/or forum selection clause in an underlying contract may be instructive

in considering the requirement that the defendant purposefully avails itself of the

privilege of conducting activities within the forum."); *Burger King*, 471 U.S. at 481-82

(holding that contractual choice of law provision combined with the long business

relationship between the parties "reinforced the defendant's deliberate affiliation with the

forum State and the reasonable foreseeability of possible litigation there."); *Chase*

*Manhattan Bank v. Banque Generale du Commerce*, 1997 U.S. Dist. LEXIS 7020, *7-*8

(S.D.N.Y. 1997) ("A choice of law provision is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws….")

Based on the foregoing conduct by Defendant and the terms of the parties' Agreement, Plaintiff has made a *prima facie* showing that Defendant purposefully availed itself of the privilege of conducting activities in Oregon.

> **b.      Plaintiff's breach of contract claim against Defendant arises out of and/or results from Defendant's Oregon-related activities**

The second prong of the specific jurisdiction test asks whether the claim arises out of or results from the Defendant's forum-related activities.  The Ninth Circuit uses a "but-for" test to conduct this analysis.  *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003).  "The question can be formulated as this: But for Defendant's contacts with Oregon, would Plaintiff's claims against Defendant have arisen?"  *Ellislab, Inc. v. Gippy's Internet Solutions, LLC*, 2012 U.S. Dist. LEXIS 168985, *18 (D. Or. 2012).

Here, Plaintiff has made a *prima facie* showing that Plaintiff's breach of contract claim would not have arisen "but-for" Defendant's contacts with Oregon.  Indeed, there would be no Agreement between Plaintiff and Defendant but-for Defendant's solicitation of Plaintiff to allow Defendant to become a retailer and then distributor of Plaintiff's products.  The business relationship solicited by Defendant resulted in an ongoing business relationship between Plaintiff and Defendant that lasted for over 10 years. The Agreement at issue in this case was finalized through email and telephone communications to and from Bend, Oregon.

During parties' business relationship, including during the period the Agreement at issue in this case was in effect, Defendant paid millions of dollars to Plaintiff in Bend, Oregon in exchange for hundreds of shipments of Plaintiff's products from Bend, Oregon and other locations. Pursuant to the terms of the Agreement, Defendant also regularly sent Plaintiff reports pertaining to Defendant's performance under the Agreement. Defendant sent those reports to Plaintiff in Bend, Oregon. In other words, during the terms of the Agreement, Plaintiff and Defendant were regularly transacting business into and out of Oregon.

Defendant breached the Agreement by failing to make payments for Plaintiff's products and by failing to make the status and sales reports required by the Agreement. Defendant owes Plaintiff   Based on Defendant's breaches, Plaintiff terminated the Agreement. Defendant nevertheless improperly continued to sell Plaintiff's products and Plaintiff's logos, trademarks and other branding in the conduct of Defendant's business. Based on these facts, Plaintiff has clearly established a *prima facie* case that Plaintiff's breach of contract claim arises out of and/or results from the Defendant's Oregon-related activities.

> c.      **Defendant cannot make the required compelling case that exercising personal jurisdiction over Defendant would be unreasonable**

The third and final prong of the specific jurisdiction test is that <u>Defendant</u> must demonstrate <u>a compelling case</u> that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 476. In the absence of such compelling persuasion, the court presumes that jurisdiction is reasonable. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

To prove that the exercise of jurisdiction would be unreasonable, Defendant must succeed in an analysis consisting of the following specific factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1080 (9th Cir. 2011); *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. Cal. 1995).  No single factor is dispositive; the court must balance all seven.  *Roth v. Garcia Marquez,* 942 F.2d 617, 622 (9th Cir. 1991); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  The Ninth Circuit has recognized that a defendant faces a high burden to make a compelling case that jurisdiction is unreasonable.  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) (finding personal jurisdiction over two foreign individual defendants, despite the fact that only two of the reasonableness factors favored plaintiff while three factors favored defendants, and despite the fact that defendants "made a strong argument … that the exercise of jurisdiction may be unreasonable."); *Caruth*, 59 F.3d at 129 ("Given the closeness of the factors,  we conclude that [defendant] has not presented a 'compelling case' that exercising jurisdiction over it would be unreasonable.")  Here, Defendant cannot demonstrate a compelling case that exercising personal jurisdiction over Defendant in this case would be unreasonable.

(1)    The extent of Defendant's purposeful
interjection into Oregon

This factor weighs heavily in favor of personal jurisdiction over Defendant, largely for the same reasons demonstrating Defendant's "purposeful availment," above. Defendant initiated the business relationship with Plaintiff, and at all times during that relationship, Plaintiff has been headquartered in Bend, Oregon.  Defendant's representatives travelled to Bend, Oregon on two occasions in furtherance of that business relationship.  The Agreement also required Defendant's performance in Oregon.  Specifically, the Agreement required Defendant to send regular reports, notices, and communications regarding the Agreement to Plaintiff's Bend, Oregon headquarters.  All of Defendant's product orders under the Agreement, and the payment of millions of dollars for those orders were submitted by Defendant to Plaintiff's in Bend, Oregon.  Defendant also accepted shipments of Plaintiff's products from Bend, Oregon. Pursuant to the Agreement, Defendant still owes Plaintiff approximately $169,570.92 plus interest for inventory that Defendant has not paid for.  Defendant also expressly agreed that Oregon law governs the parties' relationship.  The foregoing conduct by Defendant clearly demonstrates that Defendant purposefully injected itself into Oregon through a detailed and lengthy contractual business relationship with Plaintiff, an Oregon corporation.  *See Exp. Global Metals, Inc.,* 2013 U.S. Dist. LEXIS 154379 at *14 (finding that the "purposeful injection" factor weighs in favor of personal jurisdiction over the out of state defendant "because, on more than one occasion, [the defendant] has solicited and/or engaged in business with an Oregon corporation.")

(2)    The burden on Defendant of litigating in
Oregon

This factor also weighs in favor of Plaintiff.  It is not burdensome to require

Defendant to defend this case in Oregon considering, as described above, Defendant's

purposeful availment of the privilege of doing business in Oregon and injection into

Oregon through its lengthy business and contractual relationship with Plaintiff, an

Oregon corporation.  In addition, any burden on Defendant is substantially mitigated

given modern telecommunications technology and modern travel.  *See, e.g.,*

*CollegeSource, Inc.*, 653 F.3d at 1080 ("[W]ith the advances in transportation and

telecommunications and the increasing interstate practice of law, any burden [of

litigation in a forum other than one's residence] is substantially less than in days past.");

*Sinatra*, 854 F.2d at 1199 ("Modern advances in communications and transportation

have significantly reduced the burden of litigating in another country.")  The fact that

Defendant's agent, Mr. Engeseth appears to be fluent in English (by signing the

Agreement and his declaration written in English) also mitigates any claimed burden

associated with litigating in Oregon.  *See Dole Food Co. v. Watts,* 303 F.3d 1104, 1115

(9th Cir. Cal. 2002) (fact that foreign defendants fluent in English a "mitigating factor").

In addition, Defendant's Memorandum contains nothing more than a conclusory

assertion that it would be burdensome for Defendant to defend this case in Oregon.

Defendant makes no showing as to why it would be burdensome for Defendant to

litigate this simple breach of contract case in Oregon.

(3)    <u>The extent of the conflict with the sovereignty</u>
<u>of Defendant's state</u>

Defendant does not discuss this factor in its Memorandum of Points and

Authorities in Support of Defendant's Motion to Dismiss (the "Memorandum"), and has

therefore failed to make any showing (let alone, a compelling one) that this factor favors

Defendant.

(4)    <u>Oregon's interest in adjudicating this dispute</u>

This factor also favors Plaintiff because Oregon has a substantial interest in

adjudicating disputes involving Oregon corporations.  *See. e.g., Nike, Inc. v. Lombardi*,

732 F. Supp. 2d 1146, 1156 (D. Or. 2010) (holding that Oregon had a "high" interest in

adjudicating a dispute involving injury to one of its residents); *Harris Rutsky & Co. Ins.*

*Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003); *Dubois v. All Am.*

*Transp., Inc.*, 2006 U.S. Dist. LEXIS 50583, *18, *20 (D. Or. 2006) (holding that "Oregon

has an interest in one of its resident's recovery of substantial sums loaned out of state.")

Defendant still owes Plaintiff nearly $170,000 plus interest under the Agreement.

Defendant is also liable for Defendant's improper use of Plaintiff's intellectual property.

Defendant does not dispute that Oregon has a substantial interest in adjudicating this

case.

(5)    <u>The most efficient judicial resolution of the</u>
<u>controversy</u>

Defendant does not address this factor in its Memorandum.  However, this Court

can certainly adjudicate this simple breach of contract case, filed by an Oregon Plaintiff,

efficiently.  In addition, the Agreement between Plaintiff and Defendant contains a

"Governing Law and Jurisdiction" clause that states that Oregon law governs the

Agreement.  This Court has more experience and more expertise applying Oregon law than any alternate forum.  Accordingly, this factor weighs in favor of Plaintiff.

(6)    The importance of the forum to Plaintiff's interest in convenient and effective relief

Plaintiff is an Oregon corporation with its principal place of business in Bend, Oregon.  Plaintiff's counsel, Francis Hansen & Martin LLP, is also located in Bend, Oregon.  (Declaration of Martin E. Hansen ("Hansen Decl."), ¶ 2.)  Plaintiff initiated this case by filing its complaint the Deschutes County Circuit Court because litigating Plaintiff's claims in Oregon is convenient for Plaintiff, and will provides Plaintiff with the most effective relief.  (Hansen Decl., ¶ 3.)

(7)    The existence of an alternative forum

This factor is irrelevant because Defendant has failed to make a compelling case it is unreasonable for this Court to exercise personal jurisdiction over Defendant.  *See, e.g., CollegeSource, Inc.*, 653 F.3d at 1080 ("Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable."); (citation omitted); *Sinatra*, 854 F.2d at 1201 (same); *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987) (same).

Defendant's Memorandum makes reference to an action filed by Defendant against Plaintiff in Denmark.  Plaintiff has filed a motion to dismiss that case based on Denmark's lack of personal jurisdiction over Plaintiff.  (Hansen Decl., ¶ 4.)  That motion has not been ruled on, but as set forth in the declaration of Will Blount, none of Plaintiff's representatives have ever visited Defendant in Denmark.  Nor did Plaintiff did ship any of its products to Denmark under the Agreement.  (Blount Decl., ¶¶12, 13.)

Thus, based on Plaintiff's total lack of contacts with Denmark under the Agreement, Denmark is not a viable alternative forum for litigating Plaintiff's claims.  It is also worth noting the Defendant's claims against Plaintiff in Denmark are limited to the assertion that Plaintiff's termination of the agreement for cause was somehow improper, even though the agreement was set to expire only a month later.  (Hansen Decl., ¶ 4.)

Defendant's Memorandum fails to even address most of the seven factors, and even then, the only factor that does not necessarily weigh in favor of Plaintiff is factor number (3), which the 9th Circuit has recognized should not be given controlling weight. See *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("If given controlling weight, [the sovereignty factor] would always prevent suit against a foreign national in a United States court.").  When considered collectively, it is clear that Defendant has not satisfied its burden of presenting a compelling case that jurisdiction in Oregon is unreasonable.  Accordingly, because Plaintiff has presented a *prima facie* case that Oregon has personal jurisdiction over Defendant, Defendant's motion to dismiss for lack of personal jurisdiction should be denied.

## C.    Defendant's Motion To Quash Service Should Be Denied

Defendant has also moved to quash service.  Plaintiff is in the process of re-serving Defendant in an expedited manner to remedy any claimed deficiencies.  Once this is complete, Plaintiff will supplement the declaration of counsel for Plaintiff, Martin E. Hansen, with the facts and exhibits to demonstrate proper service.  Thus, by the time there are any further proceedings in this matter, Defendant's claim of improper service of process will be moot.  For this reason, Defendant's Motion to Quash Service should be denied.

IV.    **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully submits that Defendant's

Motion to Quash Service and Dismiss the Complaint for Lack of Personal Jurisdiction

should be denied.


DATED this 21st day of March 2014.

FRANCIS HANSEN & MARTIN LLP


/s/ Martin E. Hansen
MARTIN E. HANSEN, OSB #800526
Attorney for Plaintiff